My name is Alan Bentley. I represent the appellant DeAndre McDuffie in this case. Mr. McDuffie received a 21-month sentence, which was at the low end of the agreed-upon sentencing guideline range. And on this appeal, it is our contention that the sentence was unreasonable under Booker. We have two prongs to that argument. The first is a procedural issue in which we question the adequacy of the reasons and explanation that Judge Martinez gave to Mr. McDuffie. And then the second is the claim that substantively the sentence was unreasonable because it was greater than necessary to achieve the goals of sentencing, as set forth in Section 3553A of Title 18. One of the principal cases on which we rely is U.S. v. Bonner, a Sixth Circuit case. And I wanted to alert the panel that in preparing for this argument, I learned that the Sixth Circuit had granted en banc. And so I've submitted two letters to the panel on that and apologize for not catching it sooner. That's fine. It's been vacated at this point, I guess. That's correct. My second letter is an effort to persuade the Court that there is some weight that might be given to that decision. Since the Sixth Circuit has not made its final ruling, of course, on an en banc basis, I suspect that they may be watching and waiting for the Supreme Court to rule in the Rita and Claiborne cases which were argued on February 20th. And, indeed, I don't want to suggest that this panel should delay because Mr. McDuffie's days are approaching when he will be released. In any event, but I would just observe that the Supreme Court's decision in that case could impact this panel's ruling if they decide to go with the majority of circuits that have held a within-guideline sentence is presumptively reasonable. But I think we can address this case without making that decision or even adopting the prosecutor's backhanded effort to say that would be another way to look at it. Can't we just adopt it to see whether Judge Martinez appropriately looked at everything, including what was a pretty tragic childhood? There are many different ways that you could deal with the issues on this appeal, and there certainly are ways other than the presumptive reasonableness standard. I just want to make a couple of points that I think are not adequately made in the briefs, and then I'll sit down. First is I note the government relies on the articulated differences in Title 18, Section 3553A, for the requirements as to the explanation of the sentence. If the sentence is within guideline range, less of an explanation is required than when the sentence is outside the guideline range. And my point on this is simply that those articulations were part and parcel of a mandatory guideline scheme. We now have an advisory guideline scheme where other factors are also pertinent, and therefore I would suggest that for purposes of appellate review, whatever the statute says and whether the statute continues to apply after its revision or reconstruction by the remedies majority in Booker, whatever, for purposes of appellate review, this Court should require a higher standard and more explanation than we received in this case. It seems like he was in pretty good shape with the bad childhood and all those factors until he got arrested for DUI, his first sentencing. It was a great disappointment, I think, for the judge as well as for all the others of us involved. That does affect, does it not, his rehabilitative effort and all that sort of thing? It certainly does. And when I was thinking of the sentencing, I was about to really swing to the other extreme and say, well, we've got to just go with the guidelines here. But then I thought, well, what does this mean? Here's a guy who, and you can see what I did. I said, well, I was looking to keep this guy in the community because I thought he could do it. He had shown himself over six or eight months. He was a darn lucky young man to get out at all in the first place, and he did extremely well. But it seemed to me that actually you had essentially convinced the judge of that, and the judge goes through all these factors about the childhood and your arguments and basically said he was leaning really in the direction of right where you'd gotten him. And he went through a lot of these factors, and then, of course, we had this unfortunate incident. I'm a little hard-pressed to know what more he could have said under any standard to let us see that he actually thought through a sentence unrelated to the guidelines almost. He was basically saying, I'm looking at this holistically, and I think that the probation department report was too high, he said. So what more would he have said that would give us a better record for review? He really went the extra mile, it seems to me. I think we don't quite know what he was thinking. Now, if he had said, Mr. McDuffie, I see a problem here, and I don't think you're beyond hope. I think you need to participate in the drug and alcohol program, and I know there's going to be some delay before you can get into that program at the Federal Correctional Institution. And I also know that if you succeed in that program, you can get up to a year off your time. So taking all that into consideration, I'm going to give you 21 months, which may turn into 10 or 12, because I want you to have that incentive to succeed in the drug and alcohol program. Well, then we would know exactly why the judge did what he did. And here the only thing the judge says is you've already gotten a big break, and therefore you shouldn't get any greater break, I think. He doesn't quite say that. Or I'll say it this way. You gave just now a good reason the judge could have had, but he didn't have to have that reason. All he had to have was good reasons. And I think he gave us some pretty good reasons. Well, and that is a matter of judgment in which we disagree. I think he came up a little bit short. The only other point I want to make, which might well have been put into a reply brief, is as far as the government's argument at page 27 in their brief, where they suggest that the guidelines already encapsulate the 3553A factors, therefore a guidelines-range sentence should be entitled to a great deal of respect. Actually, what they say is the factors that the sentencing commission was directed to use in developing the guidelines are a virtual mirror image of the 3553A factors in Booker. And I can't let that stand uncorrected, because the guidelines do not consider all of the 3553A factors. They do not consider the need for effective education and treatment of the offender. They do not consider the need for effective education and treatment of the offender. What she addressed. I'm sorry? He addressed that. Judge Martinez? Yes. He did go through the 3553A factors. But the government, I believe, gives the guidelines too great a weight. I think the Court has my argument. Unless there are questions, I will sit down. Thank you. May I please report? Good morning. Ron Friedman for the United States. Judge Martinez, in this large wiretap case, ended up sentencing about 30 people, all of whom, in the end, pleaded guilty. And he got to know the case quite well. And I would agree with at least the sentiment expressed in the questioning that he really did all you could ask him to do. And, frankly, I would suggest that, you know, both these cases are pretty much model exercises by the Court in how to first figure out the guideline range and then apply all the factors. And that's what he's done. And he's clearly awake. He clearly is conscientious. And he clearly knows the defendant before him. And he has this ---- Did you say he's awake? Sorry? Did you say he's awake? Yes. I'm meaning that he's actively engaged in this case. I hope he's awake. Okay. Being awake is a necessary ---- I always hope that's a mandatory minimum. It's a necessary, not sufficient requirement for being awake. I understand that. But it's my way of saying he was clearly engaged in what was going on before him. It wasn't some hollow recitation of the Title 3553 factors. And one of the opening comments to Mr. McDuffie was, and I'm reading from what he said, you know, you're on the eve of sentencing, and you show, quote, you show us that you really can't keep your word. And the judge was struck by the fact that in between the time of the plea and sentencing, he had been arrested again for a DUI. He had failed to report that to pretrial, and he was again before the court. The court also spoke directly to him in saying to him, hey, look, you might have had a difficult childhood, but you've now got two predicate crimes for career offender status, and you're a young man. You do this one more time, and guess what? You're going to be looking at a sentence of 20 years or more, which would be mandatory. And so, you know, the court is balancing all of this when it's talking to the defendant and hearing the argument we should depart downwards because he's had a difficult childhood. Frankly, the court balanced all the factors. It explained why it was not going to depart downwards. It explained why it thought it was a reasonable sentence. And unless the court has any questions, the government would defer to the record. Thank you. Did you have anything further to add? All right. Thank you for your arguments. The case of United States v. Mr. McDuffie is submitted. We'll hear argument next in United States v. Fuhrer. Good morning. Robert Goldsmith, appearing for Elijah Fuhrer. This is where we believe the district court erred. In attempting to make a guideline determination, the court switched gears, and instead of actually making a determination of the role, it shifted into the 3553 factors. And we think that the court first must independently make a guideline assessment before it throws into the hopper all the 3553 factors. In this case, in the record, in the excerpts of record of the sentencing at tab 3, page 15, the court even notes that there really wasn't much dispute about my time role in the matter. The court says the government acknowledges he was less involved than his brothers. I don't agree one bit. Don't disagree one bit. And probably by a substantial margin, he says. And then he goes into saying, however, just moments ago, this court sentenced Jason Fuhrer reluctantly to 10 years. He was actually facing a sentence of 22 years. Both of his brothers are going to get substantial prison time. The court agrees that the defendant has mental health issues, would benefit from mental health treatment. He has dependency issues, would benefit from treatment of that. But in looking at all the factors that affect sentencing, the court needs to avoid unwarranted sentence disparity. So what it does is jump to the 3553 factors instead of actually make a determination on a role. My problem with – I've got two problems with what you say. One is it – it sounds like a technical argument rather than a commonsensical argument, because the judge is very conscious of and discusses the fact that he got charged much more leniently than he could have been charged. Well, but the second one is, comment B to the guidelines specifically takes this into account. It says, I'm just reading from the guideline, if a defendant has received a lower offense level by virtue of being convicted of an offense significantly less serious than warranted by his actual criminal conduct, a reduction for a mitigating role under this section ordinarily is not warranted then enough. That's this case. That does not apply. Because? Because the application note explains that when it's a charge, say, of a conspiracy, that's reduced to a possession. This case was not reduced to a possession, as that application note illustrates. This is the case. I'm sorry. The note goes on and talks about that, but it says, for example. Right. It doesn't say, this is the only thing we're talking about. Right. But here's where I think the government misrepresented that particular argument. In this case, we had no agreement on role for purposes of the plea agreement. The plea agreement actually, we feel, was reduced his exposure on the amount of drugs, kept him in the conspiracy, but reduced his exposure on the amount of drugs because of his cooperation. Instead of getting a 5K motion, they lowered the amount of drugs that the court, we agreed that this would be the amount the court should consider for the guidelines. We had no agreement on role. In two different parts of the plea agreement, it says you, as the juror, have to continue to cooperate. If we want you to testify, you're going to have to testify to keep this plea bargain. And it also says we will advise the court of your agreement to cooperate, but it's not a 5K. So that, again, removes it from that application note, I believe. And finally, even as to the offense level, the offense he pled to, and in the record, he's clearly a minor player. This is a brother who was mentally ill, a drug addict, suicidal. He's on the periphery of this conspiracy. The law says you compare him to the average co-participant in this case. And if you look at the presentence report that lists all the large quantities of drugs and money that many of the other defendants had in this case, my client isn't in that category. Compared to the average co-participant, he's an errand boy. His brothers throw him a crumb now and then. Oh, Elijah, go do this for me. Elijah, go do that for me. That's what his role was. Whether or not he testified. Well, I would be more convinced by your argument if the government had done what the government often does, which is to charge at a very high level, which I frankly think the government did the right thing here. They charged at a fairly low level when they could have charged much higher. Well, the charge, to be precise, is still a conspiracy that he's pleading to. The issue is the amount of drugs he was responsible for. And one of our arguments, even if we didn't have the agreement, was that these drug amounts were determined by his brothers or other people that he was doing favors for. He wasn't paid. He was a gopher for them. And as I say, he wasn't the one involved in negotiating the amounts or making the money off of it. They would have him just go collect the money, the higher risk behavior. But he was my position is that in terms of the offense, he ultimately pled to his role still was minor. And I think the court, in making its findings, really kind of jumped ahead and didn't deal with the role issue per se. Because the court, I'm not sure, really relied upon that adjustment to say that's why I'm not getting the role. Because the court said he was substantially less than the others and didn't make the distinction that the government did, well, that in the larger conspiracy he was, but not in the one he pled to. Because our position is the one he pled to, he was still in a minor role. He did not make any deals on his own. The government, the record, if we look at what he actually pled to in the plea agreement and the presentence report, there's nothing there that shows him anything more than an errand boy. The government cites one little drug trade he made with one of the co-defendants where he takes a little bit of marijuana and trades some pills for that. Again, that's not really the big conspiracy that the rest of these people were involved with, the large quantities of cocaine and money. He was a drug addict. And I think in this case, you do have to make discrete findings. First, to say this is what the guidelines require me to find. If the judge had said I reject him for his role because he didn't play a minor role for the offense he pled to under the application note that you cite, then I don't think I'd be here. But he didn't do that. Instead, he jumped ahead and started talking about disparity and rehabilitation and those things. So he mixed it all together. And I don't think that's the way the guidelines work. The court still has to make a correct guideline determination. I think the court, as this Court noted in the earlier case, took a holistic approach to this. But I think that the law, the Cantrell case that we've cited, and this Court has consistently cited Cantrell over the last year, which is that the court first must make a correct guideline determination. Then it goes to the 3553 factors. Here, the Court just threw it all under the hopper and said, okay, well, based on all these various factors, I'm going to go with the low end of what the government and probation say should be the guideline range. So he kind of uses that as his touchstone. Well, are you saying that that guideline range was incorrect? That's exactly what we're saying. What do you think the guideline range was? We believe it should have been 18 to 24 because he should have gotten a minor role reduction because, really, the parties didn't disagree that he was substantially less culpable than the other participants. And the Court kind of sidestepped making that finding because that would have been the right range. You should have gotten 18 to 24. Is that right? That should have been his range. You got 24. Well, but the judge also said, I'm going with the low end. And he had a lot of factors that would put him to the low end. So I don't think that's the case. I'm assuming that you're correct about the – I mean, it kind of folds back to whether you're correct about the minor role, correct? Correct. Okay. But I think that the record's undisputed on that point. I really just don't think that there's any real argument that he's played any role but a minor role in this case. That's been our position from the beginning. And the Cantrell case does say that if the Court doesn't get the guideline right, then this Court doesn't go and determine whether the sentence was ultimately reasonable. The Court has to remand it back to get the guideline right and then apply the 3553 factors to it. All right. I'd like to reserve a little time in rebuttal. Thank you. Ron Friedman again for the United States. Well, I remember the sentencing as if it were yesterday. And I remember the negotiations that resulted in the plea agreement as well. And in the government's view, while it is self-serving, the government believes it was exceedingly fair to this defendant. And what we ended up doing for him was getting him, because we negotiated a quantity as we did, we ended up getting him a lower sentence than he ever could have received under the guidelines had we held him accountable for the conduct in which he was engaged with others and used the strict guideline reasonable foreseeability standards. But to keep my time short, paragraph 45 of the pre-sentence report, which was unobjected to by the defense, talks about this defendant's conduct. And it contains statements in there which the Court remarked upon at the time of sentencing indicating, and you remember that the plea agreement only held the defendant responsible for collecting fees for 4 to 6 ounces of cocaine. That was it. Nothing on the OxyContin and nothing on anything else. In fact, even though the factual basis for the plea says he also engaged in cocaine deliveries that exist in the stipulation quantity, they didn't exist because we were result-oriented, if you will, and just pegged them at 100 to 200 grams in effort to try to drive a lower sentence in this matter. But the paragraph 45 talks of him turning $16,000 worth of cocaine from powder into rock cocaine. That certainly, he wasn't held accountable for that. The next sentence talks about him carrying a gun in connection with his activities. He wasn't held accountable for that. And he certainly would have under strict guideline analysis had the government been urging it of two points for the gun and a larger cocaine quantity for the conspiracy. And cocaine base was alleged in the conspiracy, more than 5 grams. So we were result-oriented about it. In a way, we put this defendant in the same category as McDuffie, the other defendant who appeared here today. This defendant was a lesser-involved member of the conspiracy, but we didn't put him at the level 32 that applied to those who were held accountable for the general amounts that were involved in this conspiracy, which were, frankly, dozens and dozens of kilos. We reduced it. And that's what Judge Martinez was remarking upon when he talked directly to Mr. Goldsmith and the defendant. He said, look, you basically already got it. It's built into the disposition. You've worked with the government. He says he's going to he thinks it's fair, and I'm reading it, page 16 of the excerpt of record. The government believes a reasonable sentence would be 24 months, the bottom of the advisory range, giving him credit for his truthfulness in dealing with the government after arrest, holding him responsible only for a certain amount of drugs instead of what he certainly could have been exposed to here. And that's basically what the Court's doing is trying to achieve a fair sentence in relation to the other sentences and in relation to the factors that apply to this defendant. And I would agree that, you know, had we held him accountable for the larger quantities, then the resort to the minor or even minimal player role would make some sense. But when you've already engaged in this heavy discount up front in a plea agreement, I don't think it made much sense to the government or to the Court to engage in a further reduction of sentence, especially when, actually, 24 months, considering that this defendant, I believe, had eight pages of criminal history in his pre-sentence report, 24 months is quite a good bargain. And one only hopes that during those 24 months, the defendant learns what he needs to learn. Thank you. It's pretty much our position, but the government is still sidestepping the issue of the fact that he cooperated with them, and that was the reason for the reduction in the amount. The plea agreement is very open about the role. And I can't emphasize that enough, that his cooperation was a difficult thing for Mr. Fuhrer, because his brothers at that point hadn't cooperated. And he talked to the government on one or two occasions. This is beyond just after arrest. And he did not get a 5K here. And the plea agreement clearly required him to continue cooperating. And I think that that factor changes the portrait that the government is trying to make, that he was given a break on the amount so that that washes out the role issue. I just don't think that that's really what happened here. And I think the record that the government points to in the plea agreement excuse me, in the pre-sentence report actually supports our position, because the pre-sentence report has soft pedals.  And he was looking at Elijah and swearing at him and abusing him because he messed up, because he might have burned the cocaine in the microwave. They could barely let him do something like that. He was that much on the periphery, even in that particular phone call. So I would suggest to the Court that the Court still must make a correct guideline determination and cannot throw in all of the other factors from 3553 to make that determination. And that's what we ask this Court to do, is remand him for that determination. Thank you. Thank you. The case of United States v. Fury submitted. The last case for argument this morning is United States v. Moreland.
judges: Hug, McKeown, W. Fletcher